1  Michael J. Aguirre, Esq., SBN 060402
   Christopher S. Morris, Esq., SBN 163188
2  Maria C. Severson, Esq., SBN 173967
   AGUIRRE, MORRIS & SEVERSON LLP
3  444 West C Street, Suite 210
   San Diego, CA 92101
4  Telephone: (619) 876-5364
   Facsimile: (619) 876-5368
5
   Attorneys for Plaintiffs
6

7

FILED

2009 JUN 12  PM 5:43

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  MICHAEL J. AGUIRRE,              Case No. 09CV 1283    MMA WMc

12              Plaintiff,           COMPLAINT FOR DECLARATORY
                                     JUDGMENT; PRODUCTION OF FOIA
13      v.                           RECORDS

14  UNITED STATES DEPARTMENT OF
    THE TREASURY,
15
                Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2  INTRODUCTION .............................................................................................1

3  JURISDICTION AND VENUE .......................................................................2

4  PARTIES ...........................................................................................................2

5  FACTS ...............................................................................................................3

6      A.    AIG's BAILOUT .................................................................3

7      B.    PRESIDENTIAL MANDATE OF OPENNESS ................................4

8      C.    THE REQUEST .................................................................5

9      D.    TO DATE, THE TREASURY HAS FAILED
               TO PRODUCE THE REQUEST .....................................................7

10

11 FIRST CAUSE OF ACTION ............................................................................7
(Request for declaratory judgment under 28 U.S.C. §2201

12 SECOND CAUSE OF ACTION .......................................................................8
(Request for records improperly withheld in violation of FOIA)

13

14 PRAYER FOR RELIEF.....................................................................................8

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

**INTRODUCTION**

1.    This is an action by Michael J. Aguirre, of the law firm Aguirre, Morris & Severson LLP ("Plaintiff") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, seeking to vindicate the public's right to obtain government records maintained by the Department of the Treasury (the "Treasury"), an agency of the United States government, concerning the transactions between the Federal Reserve System (the "Fed") and American International Group, Inc. (AIG), a Delaware corporation, as part of the Maiden Lane lending program.

2.    The government documents that Plaintiff seeks to acquire are central to understanding and assessing AIGs involvement in the most cataclysmic financial crisis in America since the Great Depression. The effect of that crisis on the American public has been and will continue to be devastating. Millions of Americans have entrusted AIG with their money and well being through the modern insurance system and the solvency of the company is a major concern to both those who have policies with AIG and the American public at large.

3.    In response to the financial crisis, the Fed has vastly expanded its lending programs to private institutions. To obtain access to this public money and to safeguard the taxpayer's interests, borrowers are required to perform some action or provide some collateral in exchange for the money. As a result of the lending of taxpayer money, the public has a manifest interest in such matters. Despite this inherent interest, none of these transactions or programs themselves makes reference to any public disclosure of the items contained in the portfolio or other financial interests transferred to the Fed or of the Fed's methods in valuing it. Thus, while the taxpayers are the ultimate counterparty for the transactions, they have not been given any details or specific information regarding the nature of the transaction, how it was valued, or by whom.

4.    In order to be the eyes and ears of the public as well as to help investigate the solvency of AIG, Plaintiff sought access to this information under FOIA. To date, the Treasury has failed to produce the requested documents. Consequently, Plaintiff brings this suit to compel the Treasury to discharge its obligations under FOIA, so that the public can be informed of how

1

1   the Fed and Treasury are safeguarding the public's money.

2   <center>**JURISDICTION AND VENUE**</center>

3        5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because

4   this action arises under the laws of the United States, in particular, 5 U.S.C. §552.  In addition,

5   this Court has jurisdiction over this action pursuant to 5 U.S.C. §552(a)(4)(B), under which, "the

6   district court of the United States in the district in which the complainant resides, or has his

7   principal place of business…has jurisdiction to enjoin the agency from withholding agency

8   records and to order the production of any agency records improperly withheld from the

9   complainant," because, among other things, Plaintiff maintains its principal place of business in

10   this District.

11        6.     Venue is proper in this District pursuant to 5 U.S.C. §552(a)(4)(B) and 28 U.S.C.

12   §1931 because, among other things, Plaintiff's principal place of business is in this District.

13   <center>**PARTIES**</center>

14        7.     Plaintiff is an attorney with the law firm of Aguirre, Morris & Severson.  Plaintiff

15   is a resident of this district and has his principal place of business at 444 W. C Street, Suite 210,

16   San Diego, California.  Plaintiff is currently investigating AIG.  As part of the investigation,

17   Plaintiff is following the trail of money, decisions, and transactions that lead to the bailout as well

18   as the subsequent effects.  The purpose of the investigation is to inform and protect the taxpayers

19   of California.  In total, the goal of the investigation is to protect those insured by AIG and its

20   subsidiaries and affiliates as well as ensure that they will be able to collect on any claims they

21   may have.

22        8.     Defendant Treasury is an agency of the United States of America, and has

23   possession and control of the records that the Plaintiff seeks.  According to the Treasury, it is

24   charged with serving the American people and strengthening national security by managing the

25   U.S. Government's finances effectively, promoting economic growth and stability, and ensuring

26   the safety, soundness, and security of the U.S. and international financial systems.

27   / / /

28   / / /

<center>2</center>
<center>COMPLAINT</center>

1                                      **FACTS**

2     **A.     AIG's BAILOUT**

3           9.      In May 2007, AIG's stock prices sat at or around $72.00. After AIG's investors

4     were made aware of AIG's high risk exposure to spread-based lending and its credit default swap

5     programs, the stock price fell to under $2.00 on or around May 2008. Furthermore, AIG

6     shareholder equity dropped from $95 billion to $52 billion between 2007 and 2008. Cash flow

7     from operating activities decreased from $14 billion in 2006 to negative $99 billion in 2008.

8           10.     As a result of this, AIG's insurance companies doing business in California are at

9     substantial risk. AIG has suffered over $200 billion deterioration of their investment capital as of

10    December 31, 2008. AIG's reserves, reinsurance contracts, income statements, lack of surplus,

11    affiliated transactions and the Insurance Regulatory Information Systems (IRIS) ratio are further

12    indicators of a substantial and material risk that AIG will not have the financial ability to make

13    good on its commitments under insurance policies issued in California.

14          11.     In order to protect AIG from immediate insolvency, Maiden Lane II LLC (MLII)

15    and Maiden Lane III LLC (MLIII) were formed to facilitate the restructuring of the Fed's

16    financial support to AIG. The Fed extended credit to MLII to purchase residential mortgage-

17    backed securities ("RMBS") from the securities lending portfolio of several regulated United

18    States insurance subsidiaries of AIG. The Fed extended credit to MLIII to purchase multi-sector

19    collateralized debt obligations from certain counterparties of AIG Financial Products Corp.

20    (AIGFP).

21          12.     On November 10, 2008, the Fed, in conjunction with the Treasury, announced the

22    restructuring of the government's financial support to AIG in order to help with AIG's

23    restructuring. As part of this aid, the Fed authorized the transfer of up to $22.5 billion of

24    government funds to MLII to fund the purchase of the RMBS.

25          13.     On December 12, 2008, AIG and its subsidiaries and affiliates entered into an

26    Asset Purchase Agreement (Maiden Lane II Agreement) with MLII. Pursuant to the Maiden

27    Lane II Agreement, the life insurance subsidiaries of AIG sold to MLII II all of their undivided

28    interests in a pool of $39.3 billion face amount of RMBS held by the AIG Securities Lending

                                              3

1   Corp. as agent of the life insurance subsidiaries in connection with AIG's United States securities

2   lending program.  In exchange for the RMBS, the life insurance subsidiaries received an initial

3   purchase price of approximately $19.8 billion plus the right to receive deferred contingent

4   portions of the total purchase price of $1 billion plus participation in the residual, each of which is

5   subordinated to the repayment of the Fed loan to MLII.

6         14.    Pursuant to a credit agreement, the NY Fed, as senior lender, made a loan to MLII

7   in the aggregate amount of $19.5 billion (such amount being the case purchase price of the RMBS

8   payable to MLII on the closing gate after certain adjustments, including payments on RMBS for

9   the period between the transaction settlement date of October 31, 2008 and the closing date of

10  December 12, 2008).

11        15.    On November 10, 2008, the Fed, in conjunction with the Treasury, announced the

12  restructuring of the government's financial support to AIG in order to help with AIG's

13  restructuring.  As part of this aid, the Fed lent $24.3 billion to MLIII to help with the purchase

14  from certain third-party counterparties of AIGFP certain U.S. dollar denominated CDOs with an

15  estimated fair value as of October 31, 2008, of approximately $29.6 billion.

16        16.    The counterparties agreed to sell the CDOs to MLIII in exchange for a purchase

17  payment from MLIII and their retention of collateral previously posted by AIGFP under the

18  related credit derivative contracts, for an overall consideration of par.  In connection with any

19  such purchase, each AIGFP counterparty agreed to terminate the related credit derivative

20  contracts between such counterparty and AIGFP.

21        17.    The agreement between MLIII and AIGFP was captured in the Shortfall

22  Agreement.  The Shortfall Agreement between MLIII and AIGFP states that AIGFP was party to

23  the derivative transactions listed on Schedule A hereto with an aggregate notional value of over

24  $53.5 billion.  These documents are the subject of the final request.

25  **B.    PRESIDENTIAL MANDATE OF OPENNESS**

26        18.    On January 21, 2009, one day after taking office, President Barack Obama issued a

27  memo directed to the heads of executive departments and agencies.  The memo was entitled

28  Transparency and Open Government.  The memo announced that his administration was

4

1    committed to creating an unprecedented level of openness in Government.  The memo announced

2    his intention to establish a system of transparency, public participation and collaboration between

3    governmental departments and the people.  He announced that "[o]penness will strengthen our

4    democracy and promote efficiency and effectiveness in Government."  He continued on about the

5    accountability that comes from transparency, the dispersion of knowledge that accompanies

6    participation, and how collaboration engages the public and fosters participation.

7         19.    On March 19, 2009, Attorney General Eric Holder issued a follow up memo to

8    President Obama's memo to the department heads.  In his memo, he stated that FOIA should be

9    "administered with a clear presumption: In the face of doubt, openness prevails."  In explaining

10   what this meant, he explained two implications.  First, an agency should not use technicalities to

11   withhold information; just because the agency can withhold it should not mean that it does.

12   Second, agencies should strive to provide as much information as it can if it cannot make a full

13   disclosure.  This partial disclosure, he explains, is a reasonable step that departments should take

14   in order to release nonexempt information.

15   **C.    THE REQUEST**

16        20.    On May, 7, 2009, Plaintiff submitted to the Treasury, by facsimile and United

17   States Postal Service, a FOIA request (2009-05-022) seeking documents related to MLII.  The

18   request sought six categories of documents: 1) any agreement where MLII is a party, 2) a list of

19   AIG subsidiaries that were involved in MLII transactions, 3) a copy of the Asset Purchase

20   Agreement, 4) a copy of the credit agreement amongst the Fed and MLII, 5) closing documents

21   for the asset purchase and lending agreements described above, and 6) any additional documents

22   and transactions which include any distribution of funds documentation, correspondence and

23   emails amongst and between the various parties to the agreements described above.

24        21.    On May 8, 2009, Plaintiff submitted to the Treasury, by facsimile and United

25   States Postal Service, a FOIA request (2009-05-023) seeking documents related to MLII.  The

26   request sought the completed Annex A and Annex B for the MLII Asset Purchase Agreement.

27        22.    On May 8, 2009, Plaintiff submitted to the Treasury, by facsimile and United

28   States Postal Service, a FOIA request (2009-05-024) seeking documents related to Maiden Lane

1   II. The request sought the documents showing the identity of each transaction making up the

2   MLII portfolio.  In the request, Plaintiff specified the need to identify the originator of the loans,

3   when the loans originated, if they were securities, the identity of any securitizer, and the date of

4   securitization.  Further, he also asked for any documents relating to AIG and if they were

5   involved in the underlying transactions as originator or securitizer.

6       23.     On May 11, 2009, Plaintiff submitted to the Treasury, by facsimile and United

7   States Postal Service, a FOIA request (2009-05-026) seeking documents related to MLIII.  The

8   request sought the documents showing the Schedule A list of transactions compromising the $53

9   billion in notational value as part of the Shortfall Agreement between MLIII and AIGFP.

10  Plaintiff also sought the documents showing the names of the parties to the derivative transactions

11  on Schedule A, the dates of the transactions, all counterparties to the transactions, the amounts of

12  each individual transaction, the nature of the transaction, the underlyings for each transactions

13  and any related correspondence or emails.  Moreover, he asked for the forward purchase

14  agreement between the counterparty to the Derivative Transactions and MLIII, documents

15  showing the names of any counterparties, the dates of such agreements, the amounts for such

16  agreements, and any related correspondence or emails.  Finally, the Shortfall Agreement stated

17  that MLIII had delivered collateral to the counterparties; he sought the documents showing the

18  collateral and the counterparties.

19      24.     On May 8, 2009, Treasury Director of Disclosure Services, Hugh Gilmore

20  responded to the May 7, 2009 request saying that the Treasury could not process the request.

21  According to the letter, Gilmore stated that all requests need to be accompanied by an agreement

22  to pay applicable fees.

23      25.     Between May 8, 2009 and May, 14, 2009, Plaintiff and Gilmore as well as Tom

24  O'Connor of the Treasury sent various communications back and forth. On May 14, 2009,

25  Plaintiff submitted to the Treasury, by facsimile and United States Postal Service, a letter that

26  relayed and affirmed that he would agree to pay $25 for each request in order to meet the FOIA

27  regulations.

28  / / /

26.     The public has a significant and legitimate interest in the Treasury's conduct with respect to AIG, Maiden Lane II and III, and the Fed because they are enacting transactions involving tax payer money.  When the Fed uses public money, tax payers are entitled to understand and assess the decisions and transactions it enters into with private institutions.  The public's interest is particularly pronounced in light of the new expansive powers of the Fed, the new risks that the Fed is taking with public money, the potential insolvency of AIG, and the ongoing financial crisis and its effects on the American economy.

27.     As the holder of the records, the Treasury has an obligation to the people to provide the transparency of these transactions.

28.     On information and belief, the Treasury possesses the records requested above.

29.     The Treasury is obligated to release the records requested under FOIA unless it can show that the records are exempt from disclosure.

**D.     TO DATE THE TREASURY HAS FAILED TO PRODUCE THE DOCUMENTS**

30.     Under FOIA, the Treasury was required to respond to the May 7, 2009 request by June 5, 2009, which is 20 business days after the date in which Plaintiff submitted the request.  The May 8, 2009 requests required a response by June 8, 2009, which is 20 business days after the date in which Plaintiff submitted the request.  The May 11, 2009 request required a response by June 9, 2009, which is 20 business days after the date in which Plaintiff submitted the request.

31.     On 12 June 2009 the Treasury, after being informed that this legal action was being filed, sent another letter attempting to delay production of the records.

32.     Defendant has made clear by its conduct that it has not and will not produce any records.  Defendant is stonewalling the production of these records and any further appeal would be futile.

33.     Plaintiff has a statutory right to the records requested.

### FIRST CAUSE OF ACTION

(Request for declaratory judgment under 28 U.S.C. §2201)

34.     Plaintiff repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

7

1    35.    FOIA mandates public disclosure by the Treasury of the records requested.

2    36.    The Treasury has not provided the records requested to Plaintiff.

3    37.    An actual and justiciable controversy exists as to whether the Treasury has

4    violated FOIA.

5    38.    Plaintiff seeks declaratory judgment that FOIA entitles Plaintiff to the records

6    requested and that the Treasury should produce those records immediately.

7                        **SECOND CAUSE OF ACTION**

8              (Request for records improperly withheld in violation of FOIA)

9    39.    Plaintiff repeats, realleges, and incorporates the allegations in the foregoing

10   paragraphs as though fully set forth herein.

11   40.    Plaintiff seeks disclosure of, and access to, the records requested.

12   41.    The Treasury was required to respond to the requests no later than June 9, 2009 or

13   June 12, 2009, but to date, has still failed to respond.

14   42.    Plaintiff has exhausted its administrative remedies with respect to receiving a

15   response to the records requested.

16   43.    FOIA mandates public disclosure by the Treasury of the records requested.

17   44.    The Treasury's failure to make the records requested promptly available to

18   Plaintiff violates 5 U.S.C. §552(a)(3)(A).

19   45.    Upon substantially prevailing, Plaintiff should be awarded its attorneys' fees under

20   5 U.S.C. §552(a)(4)(E).

21                          **PRAYER FOR RELIEF**

22          WHEREFORE, Plaintiff respectfully prays that:

23   1.    The Court declare that the Treasury's constructive denial by failing to respond to

24   the substance of the request was unlawful;

25   2.    The Court order the Treasury to make the records requested immediately available

26   to Plaintiff; and

27   / / /

28   / / /

**8**

1      3.      The Court grant such other and further relief as this Court may deem just and

2   proper.

3                                                          Respectfully submitted,

4                                                          AGUIRRE, MORRIS & SEVERSON LLP

5

6   Dated:  June 12, 2009

7                                                          Michael J. Aguirre

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">9</div>

**&JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

## I. (a) PLAINTIFFS
MICHAEL J. AGUIRRE

## DEFENDANTS
UNITED STATES DEPARTMENT OF THE TREASURY    2009 JUN    42

CLERK U.S. DISTRICT COURT

**(b)** County of Residence of First Listed Plaintiff  San Diego County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  SOUTHERN DISTRICT OF CALIFORNIA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.                                                        DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
AGUIRRE, MORRIS & SEVERSON, LLP, (619) 876-5364
444 West C Street, Suite 210, San Diego, CA 92101

Attorneys (If Known)

**09 CV 1283    MMA WMc**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
　　　Plaintiff

☐ 3  Federal Question
　　　(U.S. Government Not a Party)

☒ 2  U.S. Government
　　　Defendant

☐ 4  Diversity
　　　(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☒ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
5 U.S.C. Sec. 552
Brief description of cause:
Freedom of Information Act ("FOIA")

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE
06/12/2009

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 001953   AMOUNT $350   6/12/09 BH   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS001953
Cashier ID: bhartman
Transaction Date: 06/12/2009
Payer Name: AGUIRRE MORRIS AND SEVERSON
----------------------------------
CIVIL FILING FEE
 For: AGUIRRE V U.S. TREASURY DEPT.
 Case/Party: D-CAS-3-09-CV-001283-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 1093
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```